# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**RICKEY GRAYSON GROVES, II**,

        *Plaintiff*,

v.

**THE CITY OF PEARL, MISSISSIPPI,**
**et al.**,

        *Defendants*.

CAUSE NO. 3:22-CV-567-CWR-LGI

## ORDER

Before the Court is the City of Pearl, Police Chief Dean Scott, Officer Ryan Edwards, and Officer Jacob Lang's motion for judgment on the pleadings—which has been converted, in part, into a motion for summary judgment. Docket Nos. 50 and 64. Also before the Court is Plaintiff Rickey Grayson Groves, II's motion for discovery. Docket No. 65. Upon review, the motion for judgment on the pleadings is granted in part and denied in part; the motion for summary judgment is granted; and the discovery motion is denied.[1]

**I.  Factual and Procedural History**

This case arises from an April 15, 2021 disturbance call at the home of Plaintiff Rickey Grayson Groves, II. Five City of Pearl police officers responded to the call. Shortly after arriving, the officers arrested Groves for "Disobeying a Police Officer – Failure to Comply." Docket No. 47 ¶ 12.

---

[1] Groves also sued the City of Pearl Board of Aldermen. The Board has been dismissed since it "is not a separate legal entity with the capacity to sue" or be sued. *Bd. of Aldermen of Town of Tutwiler v. Off. of State Auditor*, 371 So. 3d 190, 192 (Miss. Ct. App. 2023) (collecting cases).

The parties dispute what happened next. Groves alleges that after he was handcuffed, "lying on his stomach, and not engaged in any criminal activity, Officer Edwards . . . tase[d] [him] while other officers twisted his arm to the point that [he] required medical attention." *Id.* ¶ 13. Defendants' dash cam video, however, shows that Groves was not tased after he was handcuffed.

Officer William Steen then transported Groves to the Pearl police department. While en route, Groves says he "requested medical attention for injuries he sustained to his left shoulder and elbow." *Id.* Groves and Officer Steen met Pafford Emergency Medical Services at the police department. "By this time, Officer Edwards had [also] returned to the police department and assisted Officer Steen in escorting [Groves] to the ambulance." *Id.* ¶ 15.

Groves alleges that while he "was walking to the ambulance, and not engaged in any criminal activity, Officer Edwards stated to Officer Lang, "watch me slap this motherf**ker." *Id.* ¶ 16. Officer Edwards then slapped "Groves in the face without any provocation and in the presence of Officer Lang and others." *Id.*

Groves subsequently filed this suit against the City of Pearl, Police Chief Dean Scott, Officer Edwards, and Officer Lang. He sued the officers and Chief Scott in their official and individual capacities. In Groves' second amended (and now operative) complaint, he brings five claims under 42 U.S.C. § 1983: excessive force violations; *Monell* liability; negligent hiring, training, supervision, and retention; supervisor liability; and failure-to-intervene/bystander liability. He also alleges state-law claims: negligence/gross negligence and negligent infliction of emotional distress.

Defendants have now moved for judgment on the pleadings on all claims. They argue that Groves' "claims are contradicted by video evidence, he has not alleged any cognizable

2

injury from the alleged slap, he cannot overcome qualified immunity or *Monell*, and his state law claims are barred under the Mississippi Tort Claims Act." Docket No. 51 at 1. The case has been stayed to await a ruling on this motion; no discovery has occurred.

Because Defendants' motion relied on exhibits outside the pleadings, the Court converted it into a motion for summary judgment—but only with respect to Groves' excessive force claim regarding the tasing. Docket No. 64 at 2–3. All other issues are reviewed under the standard for judgment on the pleadings.[2]

## II.   Discussion

### A.   Fourth Amendment vs. Fourteenth Amendment

Groves argues that Officer Edwards used excessive force on two occasions—when he tased him during the arrest and when he slapped him at the police department. It is undisputed that the Fourth Amendment governs the excessive force claim at the time of the arrest. Where the parties disagree is on the law governing the excessive force claim at the police department. Groves contends that "both the Fourth and Fourteenth Amendments are at play." Docket No. 54 at 7. Defendants respond that only "the Fourth Amendment governs [his] claim." Docket No. 59 at 3.

Defendants are correct.

---

[2] After the Court converted part of Defendants' motion to one for summary judgment, Groves requested Rule 56(d) discovery on his excessive force claim. Docket No. 65. This claim, however, involves two incidents: the tasing and the slap. The Court previously reviewed each issue separately and will do so again today. *See* Docket Nos. 51 and 54 (discussing the parties' briefing on "excessive force at time of arrest" and "excessive force at police department"). It concludes that Groves has not provided sufficient justification to permit discovery on the alleged tasing, which is shown (or, in truth, not shown) on the dash cam video. *See infra* Section II.B.2. Additionally, his request for discovery on the slap is premature. Groves' motion is therefore denied.

3

The Fourth Amendment protects arrestees, while the Fourteenth Amendment protects pretrial detainees. *See Valencia v. Wiggins*, 981 F.2d 1440, 1444 (5th Cir. 1993). The Fifth Circuit has explained that the Fourth Amendment's protections end "*after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of time." *Id.* (emphasis in original). "It is only after these three circumstances occur that an arrestee, who was protected from excessive force under the Fourth Amendment, becomes a pretrial detainee who is protected under the Fourteenth Amendment." *Jones v. Mcintosh*, No. 4:15-CV-446, 2016 WL 4430481, at *5 (E.D. Tex. Aug. 22, 2016).

Here, only the first circumstance is met. At the time of the alleged tasing, Groves was in handcuffs at the police department, which indicates that he had not been released from custody. Docket No. 47 ¶ 16. Additionally, there are no facts suggesting that Groves was detained and awaiting trial. Thus, the Court finds that the Fourth Amendment governs both of Groves' excessive force claims.

The analysis begins with the converted summary judgment motion, which again concerns Groves' tasing claim.

    **B.**    **Motion for Summary Judgment**

        **1.**    **Legal Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts typically "review evidence in the light most favorable to the nonmoving party." *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011). But where "opposing parties tell two different stories, one of which is blatantly contradicted by [video

4

evidence], . . . a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Instead, the court should "view[] the facts in the light depicted by the videotape." *Id.* at 381.

## 2. Officer Edwards—Excessive Force at Time of Arrest

Groves asks the Court to "refrain from considering the dash cam video" because it is not authenticated. Docket No. 54 n.1. As Defendants correctly point out, however, Groves has not made a proper authentication challenge. Docket No. 59 at 3. He does not argue that "the video has been tampered with [or] that it does not depict what actually happened." *Id.* at 3 n.3.

On the merits, moreover, the dash cam footage "blatantly contradicts" Groves' allegations. *Scott*, 550 U.S. at 380. The video shows Officer Edwards kneeling on Groves' hindquarters while three other officers restrain him. *See* Docket 27-2 at 05:05-06:26. At this point, Officer Edwards is seen dangling his taser. *Id.* Once Groves is in handcuffs, all three officers stand up and Officer Edwards upholsters his taser. *Id.* The officers then pull Groves off the ground, hold him under his armpits, and walk him to the police car. *Id.* Groves is bent over as he walks towards the car, before disappearing from the frame. *Id.* At no point in the video is the taser discharged after Groves is handcuffed. [3]

Considering the facts in the light depicted by the dash cam footage, in accordance with *Scott*, the Court finds that Officer Edwards did not tase Groves after he was handcuffed. *See*

---

[3] Groves asks the Court to consider the fact that the officers were "unnecessarily hostile toward[s]" him. Docket No. 54 at 8. He maintains that after he was in handcuffs, Officer Edwards stood over him and yelled "I should have f***ing killed you, idiot." *Id.* Defendants disagree, claiming instead that Officer Edwards said, "I could have f--king killed you." Docket No. 59 at 5. After watching the video, the Court sees Officer Edwards yelling at Groves, but cannot decipher whether he said "should" or "could." Since this allegation is not blatantly contradicted by the video, the Court accepts Groves' version as true.

5

*id*.⁴ The factual predicate for this excessive force claim is lacking. Therefore, Defendants are entitled to summary judgment on the tasing issue.

### C. Motion for Judgment on the Pleadings

#### 1. Legal Standard

"The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). To survive either motion, a complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint need not contain "detailed factual allegations," but requires more than "[t]hreadbare recitals of the elements of a cause of action." *Id*. A plaintiff must plead enough "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court accepts the factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986).

#### 2. Officer Edwards — Excessive Force at Police Department

"The purpose § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights . . . ." *Wyatt v. Cole*, 504 U.S. 158, 161 (2002). The federally guaranteed right at issue here is Groves' Fourth Amendment right to be free from excessive force. To succeed on his claim, Groves "must demonstrate an (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the

---

⁴ Groves also claims that the "officers continued to twist his arm after he was in handcuffs." Docket No. 47 ¶ 12. The officers appear to twist Groves' arms as they pull him off the ground and walk him to the car. But Groves has not explained how this constitutes excessive force. *See Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (explaining that "minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force.").

6

excessiveness of which was clearly unreasonable." *Sligh v. City of Conroe*, 87 F.4th 290, 298 (5th Cir. 2023) (quotation marks omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). This means that courts consider "whether [an] officers' actions [we]re objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Newman v. Guedry*, 703 F.3d 757, 762 (5th Cir. 2012) (quotation marks omitted). In so doing, courts must examine three factors: "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of officers or others, and whether the suspect [was] actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

    **a.**  **Analysis**

Rather than defend the reasonableness of Officer Edwards' actions, which they cannot, Defendants argue that "Groves does not plead any specific facts stating what injuries he allegedly sustained from a *mere* slap." Docket No. 51 at 9 (emphasis added). To be clear, there is nothing *mere* about the slap. This dismissive characterization of Officer Edwards' conduct is not only insulting, but it is inconsistent with Fifth Circuit precedent. As the court explained in *Sam v. Richard*, "whether an injury is cognizable depends on the reasonableness of the force, not just the extent of injury." 887 F.3d 710, 714 (5th Cir. 2018) (quotation marks omitted).

Groves has plead an injury. He alleges that Officer Edwards "struck him in the face" and explains that as a "direct and proximate result of [Edwards'] actions," he "suffered actual damages, including but not limited to, . . . pain and suffering, mental anguish, [and] loss of enjoyment of life." Docket No. 47 ¶¶ 28, 30.

7

A slap usually results in some type of injury.[5] Here, Groves has alleged that his injury is "cognizable" under the Fourth Amendment. All three *Graham* factors weigh in his favor. The facts do not indicate that Groves was arrested for a serious crime, that he posed an immediate safety threat, or that he was actively resisting or evading arrest. Rather, Groves explains that "[w]hile [he] was walking to the ambulance in handcuffs, and not engaged in any criminal activity, Officer Edwards stated to Officer Lang, 'watch me slap this motherf**ker.'" *Id.* ¶ 16. Officer Edwards then slapped Groves "in the face without any provocation and in the presence of Officer Lang and others." *Id.* Officer Edwards didn't just strike Groves—he humiliated him.

Because "a reasonable officer would view [Edwards'] use of force under [Groves'] version of the facts to be clearly excessive and objectively unreasonable under the circumstances," Groves has alleged a Fourth Amendment violation. *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013).

### b.   Qualified Immunity

Defendants then invoke the doctrine of qualified immunity. Qualified immunity shields public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *see Malley v. Briggs*, 475 U.S. 335, 341 (1986) (explaining that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."). To overcome the defense, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the

---

[5] *See* Sian Cain, *'It Still hurts': Chris Rock Speaks About Will Smith Slap for First Time*, The Guardian (Mar. 5, 2023).

right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).

Relying on footnote two in *Sam*, Defendants argue that Officer Edwards is entitled to qualified immunity because "there is no case from the Fifth Circuit or the Supreme Court holding that a mere slap, with no injuries, is unconstitutional." Docket No. 51 at 16.[6] Yet, the Fifth Circuit has held that an arrestee has a clearly established constitutional right to be free from *gratuitous* violence during an arrest. *See Ramirez*, 716 F.3d at 378–79; *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 346–47 (2001); *Jones v. Treubig*, 963 F.3d 214, 226 (2d Cir. 2020) (explaining that "the use of entirely gratuitous force is unreasonable and therefore excessive" (quotation marks omitted)). What is more gratuitous than telling a handcuffed individual, "I am going to slap you," and then act on that promise.

"A right is clearly established when it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Ramirez*, 716 F.3d at 375 (quotation marks omitted). While a plaintiff is generally required to point to "existing precedent" that places "the statutory or constitutional question beyond debate," *Sligh*, 87 F.4th at 300, the Fifth Circuit has recognized that "in an obvious case, the *Graham* excessive-force factors themselves can clearly establish the answer, even without a body of relevant case law," *Newman*, 703 F.3d at 764 (quotation marks omitted).

This is an obvious case of excessive force.[7] None of the *Graham* factors justify Officer Edwards' actions. Groves was in handcuffs, he was not engaged in unlawful activity, and he

---

[6] In the Courts view, footnote two supports the finding that an unreasonable slap could constitute excessive force. *See Sam*, 887 F.3d at 714 n.2 (Fifth Circuit "observ[ing] that least one other circuit has held a slap to the face to be similarly excessive and unreasonable.").

[7] Indeed, an officer awaits sentencing after having pleaded guilty to violating 18 U.S.C. § 242, Deprivation of Rights Under Color of Law, on the charge of striking in the face a handcuffed individual who was not

9

was not resisting arrest. These facts suggest that Officer Edwards' actions are unconstitutional. *See id.* (finding that defendants violated clearly established law when they used "objectively unreasonable" force against a plaintiff who "committed no crime, posed no threat to anyone's safety, and did not resist the officers" commands); *Joseph ex rel. Joseph v. Bartlett*, 981 F.3d 319, 342 (5th Cir. 2020) (same).

"Qualified immunity [does] not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel." *Newman*, 703 F.3d at 763–74. Officer Edwards is not entitled to use his badge as a sword and a shield. Accordingly, his request for qualified immunity is denied.

### 3.   Officer Lang – Bystander Liability

In his next claim, Groves contends that "Officer Lang had an opportunity to stop Officer Edwards from slapping" him. Docket No. 54 at 12. Defendants disagree. They argue that Groves provides "no detail as to where Officer Lang was located, the speed with which the slap occurred after the statement was made[,]. . . or if he had a reasonable opportunity to intervene. Docket No. 59 at 7.

"[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). In evaluating such claims, courts consider whether the officer was present at the scene and whether they "'acquiesce[d] in' the alleged constitutional violation." *Id.* at 657 (citing *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).

---

resisting arrest. *See United States v. John Winstead*, No. 3:24-CR-44-CWR-ASH, Docket No. 1 (S.D. Miss. Apr. 26, 2024).

Here, Groves' allegations establish that Officer Lang was present during the incident, but it is unclear whether Officer Lang acquiesced to the slap or had an opportunity to intervene. That said, even if the "facts demonstrate[d] such an opportunity, they certainly do not show a clearly established right to intervention." *Tuttle v. Sepolio*, 68 F.4th 969, 974 (5th Cir. 2023). To overcome qualified immunity, Groves had to "identify law clearly establishing that [Officer Lang's] actions violated [his] constitutional rights, i.e., [he] [had to] show that any reasonable officer would have known that the Constitution required them to intervene." *Sligh*, 87 F.4th at 301 (quotation marks omitted). Since he has failed to do so, his claim against Officer Lang is dismissed.

### 4. Chief Scott — Supervisor Liability

Groves then argues that Chief Scott violated his duty to train, supervise, and discipline the "lower ranked officers." Docket No. 54 at 14. "A supervisor may be held under § 1983 if they affirmatively participate in the acts that cause the constitutional deprivation, or implement unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008) (cleaned up).

Groves acknowledges that to prevail on his claim, he must eventually show that "Chief Scott failed to act, with deliberate indifference, in response to his subordinate officers' violations of individual's constitutional rights." Docket No. 54 at 13. Yet, his complaint does not allege how Chief Scott acted with deliberate indifference. He has not stated a claim against Chief Scott.

### 5. *Monell* Liability

To establish a municipal liability claim, Groves "must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation

11

of a constitutional right." *Hicks–Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017). "To proceed beyond the pleading stage, a complaint's description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quotation marks omitted).

Groves alleges that the City "maintained a persistent and widespread custom, practice, and/or policy of negligently supervising and training subordinate police officers." Docket No. 47 ¶ 32. He also claims that the City was "deliberately indifferent to hiring and retaining incompetent and unsafe police officers." *Id.* ¶ 40. Groves has not, however, set forth a widespread pattern of similar instances that could give rise to a municipal custom. *See Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) (explaining that "[a] pattern requires similarity, specificity, and sufficiently numerous prior incidents."). And his conclusory allegations are "not enough to imply or state that policymakers acted with deliberate indifference." *Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023). Therefore, his claim against the City is dismissed.

### 6. State Law Claims

The Court now turns to Groves' state-law claims of negligence/gross negligence and negligent infliction of emotional distress.[8]

The Mississippi Tort Claims Act (MTCA) "is the exclusive state remedy against a governmental entity and its employees for tortious acts or omissions which give rise to civil

---

[8] Groves' complaint refers to "Defendants" generally, which could be interpreted as lodging state-law claims against the City, Chief Scott, Officer Edwards, and Officer Lang. Defendants, however, maintain that the complaint does not actually assert state-law claims against Officer Lang, and Groves does not dispute this. The Court will therefore not consider any state-law claims against Officer Lang.

liability." *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 594 (5th Cir. 2006). It waives "the immunity of the state and its political subdivisions" for torts committed by "their employees while acting within the course and scope of their employment." Miss. Code Ann. § 11-46-5(1). But where an employee acts outside the course and scope of their employment, the MTCA does not apply. *See id.* § 11-46-5(2) (explaining that an employee acts outside the course and scope of their employment when their conduct constitutes "malice . . . or any criminal offense other than [a] traffic violation[].").

Defendants first argue that Groves "improperly brings state law claims against both the City and the individual-capacity defendants." Docket No. 51 at 22. They are correct. An employee acting within the course and scope of their employment "may be joined in an action against a governmental entity in a representative capacity" but may not "be held personally liable." § 11-46-7(2); *see Burnett v. Hinds Cnty. ex rel. Bd. of Supervisors*, 313 So. 3d 471, 477 (Miss. 2020). But where an employee acts outside the course and scope of their employment, the action must proceed against the employee "as an individual." *Univ. of Miss. Med. Ctr. v. Oliver,* 235 So. 3d 75, 82 (Miss. 2017).

So the question for the Court is whether Officer Edwards and Chief Scott were acting within the course and scope of their employment when they committed the alleged acts.

### a. Officer Edwards

Groves' claims against Officer Edwards are based on the alleged tasing and the slap. Docket No. 47 ¶¶ 52–57. He says these are negligence-based claims. The Court respectfully disagrees.

"[E]fforts to re-label tort suits as something else in order to avoid some part of the MTCA are ineffective. [Courts] look to the substance of the claim, not its label." *Jones v. Miss.*

13

*Institutions of Higher Learning*, 264 So. 3d 9, 27 (Miss. Ct. App. 2018) (quotation marks omitted). Groves claims are based on the alleged intentional acts of Officer Edwards. They constitute a form of malice, and thus by their very nature, allege that Officer Edwards was not acting within the course and scope of his employment. *See Renfroe v. Parker*, 374 So. 3d 1234, 1242 (Miss. Ct. App. 2023) (explaining that "torts in which malice is an essential element are not within the course and scope of employment" (quotation marks omitted)).

Defendants contend that Groves' negligence-based claims "are a mere re-casting of his now-dismissed assault and battery claim." Docket No. 51 at 22. *Compare* Docket No. 47 ¶¶ 52–57 *with* Docket No. ¶¶ 56–61. Groves appears to concede this point by failing to respond to Defendants' argument. It is unclear why Groves retained the negligence claims but removed the intentional tort claims when he amended his complaint. Nonetheless, since the operative complaint lacks any allegations to hold Officer Edwards individually liable for his conduct, the state-law claims against him must be dismissed.

### b.     Chief Scott

Groves appears to argue that Chief Scott is liable under a negligence theory. But he has not alleged whether Chief Scott was acting within or outside the scope of his employment. Since Groves has not plead "factual content [to] allow[] the [C]ourt to draw the reasonable inference that [Chief Scott] is liable for the misconduct alleged," his state-law claims against Chief Scott must be dismissed. *Ashcroft*, 556 U.S. at 678.

## III.    Conclusion

The Court has considered all arguments. Those not directly addressed would not have changed the outcome. For the foregoing reasons, the motion for judgment on the pleadings is granted in part and denied in part; the motion for summary judgment is granted; and the

motion for discovery is denied. The parties are directed to contact the Magistrate Judge within 10 days to schedule a case management conference.

**SO ORDERED**, this the 28th day of February, 2025.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE